# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| RANDY DAVIDSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:12-cv-00705-RDP-TMP |
| STEPHEN TISH, et. al., | ) ) ) |
| Defendants. | ) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Randy Davidson, filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that he has been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration at the St. Clair Correctional Facility in Springville, Alabama. In his amended complaint the plaintiff alleges he was subjected to excessive force in violation of the Eighth Amendment by defendants Correctional Officers Tish, Smith, and Hanson. He seeks monetary damages. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

### PROCEDURAL HISTORY

The initial complaint was filed in this case on February 29, 2012. (Doc. 1). The plaintiff alleged that on November 28, 2010, he was punched and kicked, as well as sprayed with the chemical agent "Sabre red" while shackled and handcuffed. *Id.* However, he provided no further factual detail, and failed to explain how each defendant was involved. Thus, on July 13, 2012, the court ordered the plaintiff to amend his complaint and provide further factual support for his claims.

(Doc. 10). The amended complaint was filed on August 6, 2012. (Doc. 12). On November 19, 2012, the court entered an Order for Special Report directing that copies of the complaint be forwarded to the defendants and requesting they file a special report addressing the plaintiff's factual allegations. (Doc. 14). The parties were advised that the special report, if appropriate, might be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* On January 24, 2013, Defendants Smith and Tish filed a special report accompanied by affidavits and other documents. (Docs. 20). Defendant Hanson had resigned from the Alabama Department of Corrections, was not served, and on June 11, 2013 was dismissed from the case without prejudice. (Doc. 26).

On July 24, 2013, the parties were notified that the court would construe the defendants' special report as a motion for summary judgment and the plaintiff was notified that he would have twenty days to respond to the motion by filing affidavits or other material if he chose. (Doc. 28). The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff filed responses to the defendants' motion for summary judgment. (Docs. 32, 33). This matter is now before the court on the defendants' special reports being construed as motions for summary judgment.

## SUMMARY JUDGMENT STANDARD

Because the defendants' special reports are being considered motions for summary judgment, the Court must determine whether the moving party, the defendants, are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56.* In making that assessment, the Court must view the evidence in a light most favorable to the non-

2

moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

PLAINTIFF'S FACTUAL ALLEGATIONS

At the time of the events alleged in the complaint, the plaintiff was an inmate at the St. Clair Correctional Facility. On November 28, 2010, officers were called to C-Blk 2 side because an inmate had set fire to newspapers. (Doc. 12 at 6). The plaintiff did not set the fire, but was confined in the area where it had been set, and was having difficulty breathing due to the smoke. (Doc. 12 at

6). At around 7:30 a.m., the plaintiff complained that he could not breathe and asked Officer Tish to take him to the infirmary for a body chart and medical treatment. (Doc. 12 at 6-7). At 10:30 an officer finally arrived at the plaintiff's cell in response to his request. (Doc. 12 at 7). The officer handcuffed and shackled the plaintiff, and took him to the infirmary where he obtained a body chart which showed that he had no visible injuries. (Doc. 12 at 7).

    The plaintiff was escorted back to his cell by Officer Tish and Officer Smith on either side of him, with Officer Hanson following behind. (Doc. 12 at 7). As the plaintiff was approaching the gate by the shift office in segregation, Officer Hanson started repeatedly stepping on the back of the plaintiff's shower shoes. (Doc. 12 at 7). The plaintiff believed that Hanson was trying to trip him, so he turned around and asked Hanson why he kept stepping on his shoes. (Doc. 12 at 7). Hanson told the plaintiff to shut up and keep on walking. (Doc. 12 at 7-8). The plaintiff responded that he was trying to walk, but couldn't if Hanson kept stepping on the back of his shoes. (Doc. 12 at 8). When the plaintiff turned back around to walk forward, both Officer Smith and Officer Tish sprayed him with the chemical agent Sabre Red. (Doc. 12 at 8). Officer Hanson then knocked the plaintiff to the ground, whereupon all three officers began kicking and beating the plaintiff. (Doc. 12 at 8). The plaintiff had not resisted any orders, nor was he able to defend himself from the attack because his hands were in cuffs behind his back and his ankles were shackled. (Doc. 12 at 8).

    Following the encounter, the officers took the plaintiff back to the infirmary. (Doc. 12 at 8). A second body chart was prepared by Nurse Gardner. (Doc. 12 at 8). This body chart revealed cuts and bruises on his head and two black eyes that were nearly swollen shut. (Doc. 12 at 9). The plaintiff was treated for his injuries and returned to his cell with no further incidents. (Doc. 12 at 9).

DEFENDANTS' SPECIAL REPORT

Defendant Lloyd Smith is a correctional officer employed by the Alabama Department of Corrections. (Doc. 20-7 at 1). Smith testifies that at the time of the incident, on November 28, 2010, he was helping Officers Tish and Smith escort the plaintiff back to his assigned cell in segregation from the infirmary. (Doc. 20-7 at 1). After leaving the infirmary, the plaintiff became non-compliant, kept turning around in an aggressive manner and trying to remove one of his hands from his restraints, so Officers Tish and Hanson "placed" the plaintiff on the ground. (Doc. 20-7 at 1). The plaintiff fell onto the ground face first onto a rocky area, then began kicking at the officers and rolling around on the ground. (Doc. 20-7 at 2). Smith sprayed the plaintiff with the chemical agent Saber-Red to get him under control, and the plaintiff rubbed his face on the ground in what Smith believed was an attempt to wipe the spray off his face. (Doc. 20-7 at 2). Once the officers regained control of the plaintiff, they took him to the infirmary for decontamination and treatment. (Doc. 20-7 at 2).

Defendant Tish, who is also a correctional officer, testified that on November 28, 2010, he "professionally assisted in restraining" the plaintiff. (Doc. 20-8 at 1). According to Tish, this was because the plaintiff was aggressively resisting his return to the segregation unit, and refused to walk in an orderly manner after he had ordered the plaintiff to do so. (Doc. 20-8 at 1).

The defendants also included copies of the incident report (doc. 20-1), duty officer report (Doc. 20-2), use of force report (Doc. 20-3), as well as photographs of the plaintiff's injuries (doc. 20-6), and both body charts (Docs. 20-4; 20-5). These reports essentially mirror the testimony of the officers. One report noted that Defendant Smith got some of the chemical spray in his eyes and needed decontamination (doc. 20-1 at 3), while another noted that while the plaintiff was being

treated for his injuries, the plaintiff admitted that he "had been running [his] mouth and should have done what they said." (Doc. 20-3 at 2).

## PLAINTIFF'S RESPONSE

The plaintiff filed an affidavit in response to the defendants' special report. (Doc. 33 at 18-19). Therein, the plaintiff denies disobeying any order or assaulting an officer. (Doc. 33 at 19). The plaintiff continues to maintain that the reason he stopped and turned around was that Officer Hanson was continuously stepping on the back of his shower shoes causing him to stumble. (Doc. 33 at 19). He reiterates that he was shackled and handcuffed during the incident and could not have kicked at the officers, maintaining that he gave the officers no cause to beat him. (Doc. 33 at 19). The plaintiff included additional photographs of his injuries. (Doc. 32).

## DISCUSSION

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). When force is applied by prison officials, any Eighth Amendment inquiry must concentrate on whether the force was applied in a good faith effort to maintain discipline, or was carried out maliciously or sadistically for the purpose of causing harm. *Id*. at 320. In *Hudson v. McMillian*, the Supreme Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. 503 U.S. 1, 7 (1992).

Applying these standards to the facts before the court, it is clear that genuine issues of fact exist with respect to the plaintiff's Eighth Amendment excessive force claim against the defendants, which therefore precludes summary judgment at this time.

The plaintiff's sworn complaint and accompanying affidavit set out specific and detailed facts surrounding the events made the basis of this action. It is undisputed that the defendants used force against the plaintiff while escorting him back to segregation from the infirmary. The question becomes whether or not that force was excessive under the circumstances. The plaintiff contends that he had not disobeyed any orders, but kept stumbling because Officer Hanson kept stepping on the back of his shower shoes, so simply turned around to ask him why he kept doing that. According to the plaintiff, he did not then move in a threatening manner, or roll around trying to kick the officers, but was instead brutally assaulted. The defendants, on the other hand, testify that the force used was only that necessary to ensure the plaintiff's compliance, and that any injuries sustained by the defendant must have occurred when he fell onto the ground, or while he was rolling around on the ground. While the defendants' portray an entirely different scenario under which the use of force they described might well have been appropriate, for purposes of summary judgment, this court is precluded from making credibility determinations by weighing conflicting testimony. *Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008).

Thus, taking as true the plaintiff's allegations, there does not appear to have been the need for the application of force, at least to the extent as described by the plaintiff. At the very least, it seems clear that a reasonable jury could find that the plaintiff presented no real threat to the defendants and that force was applied for reasons other than a good faith effort to maintain discipline.

### RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, for the reasons stated above the magistrate judge hereby RECOMMENDS that the defendants' special report be treated as a motion for summary judgment and, as such, that it be **DENIED**.

Any party who objects to this report and recommendation must, within eleven (11) days of the date on which it is entered, file specific written objections with the clerk of this court. Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district

judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff and upon counsel for the defendants.

DONE this the 21st day of January, 2014.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE